IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHIRLENE TIFFANY MONK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 12-590-SLR | |
| | ) | |
| HIRSH INDUSTRIES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

At Wilmington this 25th day of October, 2012, having reviewed defendant's
motion for summary judgment on the issue of waiver, and the papers submitted in
connection therewith;

IT IS ORDERED that said motion (D.I. 12) is denied, for the reasons that follow:

1. **Background.** Plaintiff, Shirlene Tiffany Monk, commenced employment with
defendant Hirsh Industries, LLC in August 2006. Defendant is a manufacturer of metal
filing cabinets and wood and metal shelving units. Plaintiff worked as a lateral line
operator while employed at defendant's Dover, Delaware facility. Plaintiff alleges that,
in August 2011, she was subject to unlawful harassment by her supervisor. When
plaintiff complained about such conduct, defendant failed to take any action against the
supervisor and offered plaintiff only transfers to different shifts or to different
departments that she deemed untenable. According to plaintiff, because defendant
refused to take action against the supervisor, plaintiff "had no choice but to resign."

(D.I. 15 at 2) Plaintiff avers that she spoke with defendant's vice president of human resources, Meg Shivone, on August 23, 2011 and "asked if [she] could be assured to receive unemployment benefits if [she] agreed to resign." (*Id.*, ex. A, ¶ 14) Plaintiff was told that if she signed a release waiving potential claims, defendant would not contest her application for unemployment benefits." (*Id.*)

2. In this regard, there is no dispute that the release was prepared by defendant and given to plaintiff on August 23, 2011. The release ("the Release") included a general release of all claims as follows:

> In exchange for the promises by the EMPLOYER contained in this Agreement, EMPLOYEE will, and hereby does, forever and irrevocably release and discharge the EMPLOYER, its officers, directors, employees, agents, and affiliates (collectively, "Releasees") from any and all grievances, claims, demands, debts, defenses, actions or causes of actions, obligations, damages, and liabilities whatsoever, which EMPLOYEE now has, has had, or may have, whether the same be at law, in equity, or mixed, in any way arising from or relating to any act, occurrence, or transaction before the date of this Agreement. EMPLOYEE acknowledges that it is her intent to release EMPLOYER and Releasees from any claim relating to EMPLOYEE's employment by the EMPLOYER or the termination of such employment, including, but not limited to, tort or contract claims and claims of age, race, sex, religion, disability, national origin, or marital status arising under Tile VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000e, et seq.) . . . .

(D.I. 13, tab 2, ¶ 5)

3. The Release also contains a certification providing that "EMPLOYEE certifies that she has read the terms of the Agreement and Release, that she understands its terms and effects and is executing it of her own volition. Neither the EMPLOYER nor its agents, representatives, or attorneys have made any representations to her about this Agreement and Release other than those contained

2

herein." (*Id.,* ¶ 8) The Release further provides that plaintiff "has been advised to consult with an attorney prior to executing this Agreement and Release and has either done so or has freely chosen not to do so."

4. Plaintiff was instructed by Ms. Shivone to take the Release home for review and legal consultation. (D.I. 13, tab 1, ¶ 5) Plaintiff consulted with an attorney by telephone prior to signing the Release, but did not show the Release to the attorney or have him review it. The attorney advised her not to sign the Release or resign. (D.I. 15, ex. A, ¶ 19) Nevertheless, plaintiff returned to work the following day, August 24, 2011, and indicated to Ms. Shivone that she wanted to sign the Release. After giving her reassurance to Ms. Shivone that she wanted to sign the Release presently, plaintiff executed the Release. (*Id.,* ¶ 6) Plaintiff applied to unemployment benefits on August 28, 2011. Defendant did not contest payment of such benefits and plaintiff, in fact, received such benefits. (*Id.,* ¶ 7)

5. Plaintiff contends instantly that she only signed the Release to get unemployment benefits from defendant, and that she was not informed that, "due to the sexual harassment and hostile work environment to which" she was subjected, she would have been entitled to such compensation without signing the Release. (D.I. 15, ex. A. ¶¶17, 18) Plaintiff brought suit against defendant based on, *inter alia*, defendant's alleged discrimination against her on the basis of her sex, and retaliation against her for her complaints of sex discrimination, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* as amended. The court has jurisdiction pursuant to 28 U.S.C. § 1331.

6. **Legal standard.** A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

7. **Analysis.** The United States Court of Appeals for the Third Circuit has established an analytical framework for the dispute at bar. In *Coventry v. U.S. Steel Corp.*, 856 F.2d 514 (3d Cir. 1988), the Court was asked to determine the validity of a release that waived an employee's claims of discrimination against his former employer. Although the Court recognized that an employee may validly waive such claims, "[i]n light of the strong policy concerns to eradicate discrimination in employment, a review of the totality of the circumstances, considerate of the particular individual who has executed the release, is . . . necessary." *Id.* at 522-23. In adopting a "totality of the circumstances" approach, the Court identified seven factors that should be addressed in evaluating the release form itself, as well as the complete circumstances under which it was executed. The factors considered by the Court included:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known [her] rights upon execution of the release; (5) whether plaintiff was encouraged to see, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 523.

8. In this case, plaintiff had complained to defendant about alleged sexual harassment; she, therefore, was educated enough to know that she had such claims. In turn, the Release contained clear and specific language releasing defendant from, *inter alia*, any claims of sex discrimination arising under Title VII of the Civil Rights Act of

5

1964 that plaintiff may have had. Although the circumstances leading up to her resignation are disputed, there is no dispute that it was plaintiff who initiated the transaction at issue by indicating that she wanted to resign and "ask[ing] if [she] could be assured to receive unemployment benefits" upon her resignation. (D.I. 14, ex. A, ¶ 14) There is also no dispute that plaintiff drove the timing of this transaction, as she executed the Release the day after her meeting with Ms. Shivone and applied for unemployment benefits within the following week. Finally, there is no dispute that plaintiff executed the waiver against an attorney's advice and in the presence of a union representative. (*Id.*, ¶ 19; D.I. 13, tab 2 at 3)

9. Despite the above undisputed facts, plaintiff argues that her situation is not unlike that addressed by the Third Circuit in *Coventry,* where the Court found that the waiver was not knowingly and voluntarily made when the employee was facing termination and a "sign the waiver or starve" choice.[1] Plaintiff at bar contends that she was constructively discharged and thereafter faced the choice of either signing the Release and receiving unemployment benefits or refusing to sign the Release and facing an immediate cessation of income.[2]

---

[1]*Cirillo v. Arco Chem. Co.,* 862 F.2d 448, 452 (3d Cir. 1988) (*superceded by statute as stated in Long v. Sears Roebuck Co.,* 105 F.3d 1529, 1539 (3d Cir. 1997)).

[2]Plaintiff further argues that she did not knowingly waive her claims because she did not realize that she could have qualified for unemployment benefits absent the Release if her allegations of discrimination were credited by the State. In this regard, plaintiff also contends that the consideration given in exchange for the waiver did not exceed the benefits to which she was already entitled by law.

10. **Conclusion.** Given the record, with competing affidavits and no discovery having taken place as yet, there are genuine issues of material fact with respect to whether the Release at issue was knowingly and voluntarily executed by plaintiff.

_____
United States District Judge